**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INC., | No. C 12-1614 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER** |
| v. | |
| TRINITY SOFTWARE DISTRIBUTION, INC.; TRINITY LIQUIDATIONS, INC.; and HEIDI SHAFFER, an individual and d/b/a www.trinitysoftwaredistribution.com; and DOES 1-10, | |
| Defendants. | |

On July 27, 2012, defendants Trinity Software Distribution, Inc., Trinity Liquidations, Inc., and Heidi Shaffer ("Trinity") filed a motion to dismiss plaintiff's complaint for lack of jurisdiction or improper venue; or, alternatively, to transfer venue.[1] Plaintiff Adobe Systems, Inc. filed an opposition on August 10, 2012; Trinity replied on August 18, 2012. A hearing on teh motion is set for August 31, 2012. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having reviewed the parties' papers, and for good cause shown, the Court hereby GRANTS Trinity's motion to transfer this case.

**BACKGROUND**

Plaintiff Adobe is a "global leader in developing and distributing innovative computer software." Compl. ¶ 2. Adobe is incorporated in Delaware and has its principal place of business in San Jose,

---

[1] On August 9, 2012, defendants filed a corrected version of their motion, fixing page numbers and grammatical errors. Dkt. 27. The Court refers to the corrected version as "Defs.' Mot."

California. *Id.* ¶ 8. Adobe manufactures software, including Adobe Acrobat 9.0 Standard, and owns exclusive rights under copyright law to its software. *Id.* ¶ 9. Adobe also has registered trademarks for various terms, including "Adobe," "Acrobat," and "Photoshop." *Id.* ¶ 10.

Defendant Trinity Software Distribution, Inc. is a Florida corporation with its principal place of business in Tampa, Florida. *Id.* ¶ 13. Trinity transacts business through its website, www.trinitysoftwaredistribution.com (the "Trinity Website"). *Id.* Defendant Heidi Shaffer is the President and sole shareholder of Trinity. Shaffer Decl. ¶ 2. Defendant Trinity Liquidations, Inc. was a Florida corporation until it was dissolved prior to this case being filed. *Id.* Defendants purchase and resell many brands of software, including software manufactured by Microsoft, Symantec, Lotus-IBM, Corel, and Adobe. Trinity has eight full time employees and one part time employee. *Id. ¶ 3.*

Adobe alleges that defendants use the Trinity Website to "advertise, sell and distribute unauthorized, restricted copies of Adobe Software to consumers." Compl. ¶ 17. Adobe also alleges that defendants "use images confusingly similar or identical to Adobe's Trademarks to confuse consumers and aid in the promotion and/or advertising of their unauthorized products." *Id.* ¶ 19. For this activity, Adobe brings claims for Copyright Infringement under 17 U.S.C. § 101, *et seq.*, and the Lanham Trademark Act, 15 U.S.C. § 1501, *et seq.*

The nature of Adobe's action is a complaint over Trinity's resale of Adobe software that Adobe sells to Original Equipment Manufacturers ("OEMs"), such as Hewlett-Packard or Dell. Draper Decl. ¶ 8; Def.'s Mot. at 1. Adobe states that its OEM software is bundled with hardware, such as new computers or printers. Such bundled software is available to the consumer at a considerable discount from the retail price. Draper Decl. ¶ 8. According to Adobe, the bundles are "product specific and Adobe's product may not be unbundled and sold separately or re-bundled with products not previously approved by Adobe." *Id.* Here, Adobe asserts that Trinity sold a copy of its software that "was determined to be an unauthorized OEM product only authorized to be distributed with new Dell computers." *Id.*

Defendants contend that the OEMs (such as Dell) re-sell the software they purchased from manufacturers like Adobe to certain other large sellers, which in turn sell the OEM-software to smaller businesses such as Trinity. Def.'s Mot. at 1. Companies like Trinity then sell the software retail to

2

consumers, typically over the internet. *Id.* at 1-2. Trinity describes this as a "common business practice in the United States." *Id.* Trinity argues that while no other major software manufacturer prosecutes ordinary re-sellers of OEM software, Adobe has filed a number of complaints with respect to this activity in this District alone. *See, e.g., Adobe Systems, Inc. v. Adam Childers*, 10-CV-03571 JF; *Adobe Systems, Inc. v. Dracup*, 11-CV-3880 SC.

On July 27, 2012, Trinity moved this Court to dismiss the action for lack of personal jurisdiction or improper venue, or, in the alternative, to transfer the action to the Middle District of Florida. Trinity contends that it conducts no appreciable business in the Northern District of California, has made no known sales of the Adobe OEM product in this District, has no suppliers here, and does not have any property or contacts here. Shaffer Decl. ¶¶ 3-5. Adobe filed an opposition on August 10, 2012, and Trinity replied on August 18, 2012.

## **LEGAL STANDARD**

### **1.    Personal Jurisdiction**

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California law requires only that the exercise of personal jurisdiction comply with federal due process requirements. *See id.* at 800-01.

"A defendant whose contacts with a state are 'substantial' or 'continuous and systematic' can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). "This is known as general jurisdiction. The standard for establishing general jurisdiction is fairly high and requires that the defendant's contacts be of the sort that approximate physical presence." *Id.* (citations omitted). "Factors

3

to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.*

In order for a court to exert specific jurisdiction in accordance with due process, a nonresident defendant must have "'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe*, 326 U.S. at 315). The Ninth Circuit employs a three-part test to determine whether the defendant has such minimum contacts with a forum state. First, the "nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum," thereby invoking the benefits and protections of the forum state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1998)). Second, the claim must "arise[] out of or result[] from the defendant's forum-related activities," and third, the exercise of personal jurisdiction over the defendant must be reasonable. *Pebble Beach Co.*, 453 F.3d at 1155. The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). If the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

If a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Id.* at 1129 (citation omitted). Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Id.* (citation omitted); *see also Bancroft*, 223 F.3d at 1087.

**2.     Transfer of Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C.

4

§ 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).

Courts evaluate the following factors to determine which venue is more convenient to the parties and the witnesses: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001); *see also Jones v. GNC Franchising Inc.*, 211 F.3d 495, 498–99 (9th Cir.2000). The Court has broad discretion to address these factors based on the particular facts of each case. *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994).

## DISCUSSION

Adobe argues that this Court has both general and specific jurisdiction over Trinity, and that this venue is proper. Adobe acknowledges that Trinity is a Florida corporation with its principal place of business in Tampa, Florida. Compl. ¶ 13. It argues, however, that this District has "by far the most direct relevance and connections to this lawsuit," for the following reasons: Trinity promotes and sells software produced by companies based in this District, including Adobe; Trinity has a "highly interactive Internet website with advertising more than general in nature"; Trinity uses services such as Facebook, Twitter, Nextag, Yahoo, Google, Ebay, and Paypal for marketing and sales, and those companies are based in this District; Trinity uses "Adobe" and its product names in the meta-tag data or code of its website to attract consumers[2]; Trinity has copied parts of Adobe's own website, which is hosted in San Jose; and Trinity sold the OEM product at issue to one of Adobe's investigators in

---

[2] A meta-tag is "a tag in HTML that is inserted at the top of a Web page chiefly to describe its content and provide keywords for use by search engines." *See* "Metatag," Dictionary.com, available at http://dictionary.reference.com/browse/meta+tag?s=t (last visited August 28, 2012).

5

California. Fernandez Decl. ¶¶ 4-10; Drey Decl, ¶ 2, Ex. J; Draper Decl, Ex. H.

Trinity counters that this Court does not have personal jurisdiction over it. Trinity asserts that it operates a retail, brick-and-mortar storefront where it sells software products to customers in Tampa, Florida; it advertises and promotes locally and has a customer basis in Tampa; it has no physical location in California and has never advertised in a California newspaper or other media; it does not purchase software products in this District, wherever the software manufacturers may be located; its actual vendors are located on the East Cost and in central United States; to the extent it uses online businesses such as Facebook, Twitter, eBay and PayPal, it does so via the internet from Tampa; it does not use Adobe's trademarks for meta-tag coding; there is only evidence of one California sale of the OEM product Adobe alleges is infringing, and that sale was made to Adobe's investigator in Southern California; and its own records show it has not made any sales of the OEM product in this District. Shaffer Decl. ¶¶ 5-7; Shaffer Suppl. Decl. ¶¶ 4-12.

Trinity argues that no general personal jurisdiction exists; no specific personal jurisdiction exists; the venue is improper; and, in the alternative, transfer of venue is appropriate. The arguments will be addressed in turn where necessary.

## I. PERSONAL JURISDICTION

### 1. General Jurisdiction

One type of personal jurisdiction is general jurisdiction, which provides that a defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). The standard for establishing general jurisdiction is an "exacting standard"; "factors to be taken into consideration are whether the defendant makes sales, solicits, or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Id.* at 1086; *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).

Adobe contends that Trinity's use of an interactive website, its reliance on California internet

businesses for visibility and marketing, and its "liberal use of Adobe's name and products littered in hidden website data" to establish general jurisdiction. Pl.'s Opp. at 6. The Court disagrees. The use of a website – even an interactive one with Adobe's trademarks – along with relationships with California businesses falls far short of the exacting standard of general jurisdiction. *See Imageline, Inc. v. Hendricks*, 2009 U.S. Dist. LEXIS 71125, \*\*10-11 (C.D. Cal. Aug. 12, 2009) ("Defendants' use of two websites hosted in California, and sales to California residents through them, is insufficient to constitute continuous, systematic, and substantial activity in the forum . . ."); *citing Schwarzenegger*, 274 F.3d at 801 (defendant's contacts with forum, including use of California importers, California consulting company and California-based marketing company, and maintenance of website accessible in California, fell "well short of the 'continuous and systematic' contacts necessary to confer general jurisdiction). Trinity's contacts with California are insufficient to establish general jurisdiction.

**2.    Specific Jurisdiction**

The Ninth Circuit has established a three-prong test for analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden of satisfying the first two prongs; if they do, the burden shifts to defendant to present a "compelling case that the exercise of jurisdiction would not be reasonable." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

Under the first prong of the three-part specific jurisdiction test, the plaintiff must establish that the defendant either purposefully availed itself of the privilege of conducting activities in California, or purposefully directed its activities toward California. *Schwarzenegger*, 374 F.3d at 802. A purposeful availment analysis is most often used in suits sounding contract; a purposeful direction

7

analysis is used in suits sounding in tort. *Id.* Here, the claims for trademark and copyright infringement sound in tort, and therefore, the Court will apply a purposeful direction analysis. *Id.*; *see also Lang v. Morris*, 823 F. Supp. 2d 966, 969 (N.D. Cal. 2011) (Chen, J.) (applying purposeful direction analysis to copyright claim).

Purposeful direction analyses are guided by the Supreme Court's "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Under the *Calder* effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Bancroft*, 223 F.3d at 1087.

### A. Intentional Act

The Ninth Circuit has construed intent as referring to "an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Here, the intentional act is the sale of allegedly unauthorized software in violation of Adobe's copyrights and trademarks. *See Lang*, F. Supp. 2d at 971 ("Here, the intentional act requirement is easily satisfied, as Defendant committed an intentional act when she created paintings that allegedly infringe Plaintiffs' copyright.").

### B. Express Aiming

The second prong of the *Calder* "effects test" asks whether the defendant expressly aimed its conduct at the forum state. Here, Adobe points to Trinity's "use as sales platforms or to advertise or promote their business" products such as Facebook, Twitter, Nextag, Yahoo!, Google, eBay and PayPal, all based in Northern California; Trinity's sale of software manufactured by California-based companies, including Adobe and Symantec; Trinity's interactive website, which included Adobe's trademarks in its meta-tag information; and the fact that Trinity sold the product at issue into California. Pl.'s Opp. at 8 (*citing* Fernandez Decl. ¶¶ 4-10).

The Court finds these facts insufficient to establish "express aiming." Regarding the sale of the allegedly infringing OEM software to California, the only evidence in support is the sale of a single

8

copy of Adobe's software to one of Adobe's investigators in Southern California. Fernandez Decl. ¶¶ 5-6. Defendant Shaffer states that she has been unable to identify any other California sales of the Adobe OEM product. Shaffer Supp. Decl. ¶ 4. "A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state." *Clarus Transphase Sci., Inc. v. Q-Ray, Inc.*, 2006 U.S. Dist. LEXIS 60824, n.3 (N.D. Cal. Aug. 16, 2006) (Fogel, J.); *see also NuboNau, Inc. v. NB Labs, Ltd.*, 2012 WL 843503, *3 (S.D. Cal. Mar. 9, 2012) (Burns, J.) (finding lack of personal jurisdiction with similar facts present here; noting "[t]his kind of orchestrated purchase [of defendant's product by plaintiff] cannot give rise to personal jurisdiction.").

Nor is the Court convinced that the use of internet services based in Northern California is sufficient to demonstrate "express aiming" at California. As one court has noted, "if the use of Google Analytics or the Google.com search engine . . . were sufficient to subject [defendant] to the jurisdiction of a California court for a dispute that is unrelated to Google, the limits on specific jurisdiction would be meaningless and California courts would be overwhelmed." *Life Alert Emergency Response, Inc. v. LifeAlert Security, Inc.*, 2008 WL 5412431, n.2 (C.D. Cal. Dec. 29, 2008) (Matz, J.). Shaffer states that Trinity's social media presence is limited to coupon codes posted on its Facebook and Twitter pages once a month; it has no direct marketing or advertising campaigns on these sites. Shaffer Decl. ¶ 10. Trinity ceased using eBay more than three years ago, prior to the time period covered by the complaint. *Id.* Its use of PayPal is limited to transactions performed over the internet. *Id.* ¶ 11. These limited uses of highly popular internet services – services used by most modern retail businesses – do not establish specific jurisdiction in California. *See NuboNau*, 2012 WL 843503 at *4 ("[T]he Court doesn't find that merely engaging Twitter and Facebook to promote one's business constitutes purposeful direction at California"); *see also Burger King v. Rudzewicz*, 471 U.S. 462 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.").

Adobe's claim that Trinity "placed them[selves] in direct competition" with Adobe, particularly through the use of Adobe's website language as meta-tag data, is insufficiently supported. Other than conclusory allegations in its opposition papers and citations to cases addressing competing parties, there is no description as to how Trinity competes with Adobe. Pl.'s Opp. at 10 (*citing Brayton Purcell LLP*

9

*v. Recordon & Recordon,* 606 F.3d 1124, 1129 (9th Cir. 2010) (where defendant law firm copied plaintiff firm's website language verbatim, it made use of plaintiff's copyrighted material for the purpose of competing in elder abuse law, thereby establishing express aiming)).  Unlike in *Brayton Purcell*, there are no allegations in the complaint that Trinity competes with Adobe.  Rather, it appears that Trinity is a downstream purchaser of Adobe's software (legally or not), and that Adobe's core complaint is that because of the unlicensed nature of OEM software, "Adobe is often left to deal with complaining consumers who are unable to use the software as they had intended because they unknowingly purchased a restricted piece of software which they never should have received . . . [This] harms Adobe's reputation with the consuming public, who grow frustrated with the lack of support."  Draper Decl. ¶ 10.  Adobe makes no allegations in the complaint related to lost revenue due to Trinity's sales of the OEM product, nor that Trinity manufactures competing software.  The only evidence before the Court is that Trinity has made zero sales of Adobe's OEM software to California besides the single sale to Adobe's own investigator, who, the Court surmises, was unlikely to purchase Adobe's software otherwise.  Without more, the Court cannot conclude that Trinity is a direct competitor of Adobe.  *See Fiore v. Walden*, 657 F.3d 838, 846-47 (9th Cir. 2011) ("[M]ere bare bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.").

Finally, the alleged interactive nature of Trinity's website is also insufficiently supported here, at least with respect to the jurisidictional inquiry.  "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts, depending on how interactive the website is."  *Jeske v. Fenmore*, 2008 WL 5101808 at *4 (C.D. Cal. Dec. 1, 2008) (*citing Boschetto v. Hansing*, 539 F.3d 1011, 1018 (9th Cir. 2008)).  To support its claim that Trinity's website is "highly interactive," Adobe asserts that "among the features at the Website, Defendant offered a 'My Account' page as well as an option for 'Live Help.'"  Fernandez Decl. ¶ 4.  Yet Adobe says nothing as to the functionality of these features, nor, more importantly, whether they were used to sell the allegedly infringing product.  *See NuboNau*, 2012 WL 843503 at *4 ("Here, [defendant]'s website isn't inherently passive – it is, after all, a website that consumers visit to buy products – but through the website

[defendant] has conducted virtually no commercial activity involving the [] products at issue."); *see also Pebble Beach Co. v. Caddy*, 453 F. 3d 1151, 1158 (9th Cir. 2006) ("[T]he fact that [defendant's] website is not directed at California is controlling."); *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 419 (9th Cir. 1997) (finding lack of purposeful availment to Arizona, noting that "[t]here is no evidence that any Arizona resident signed up for [defendant]'s web construction services.").

In sum, the allegations that defendants used a handful of internet services based in California coupled with plaintiff's claims on the merits – that defendant used plaintiff's copyright and trademark on its Florida-based website – are insufficient to establish purposeful direction toward California. Perhaps most critically, plaintiff has not established that any sales of the allegedly infringing product were made to California other than its own purchase of the product. As set forth above, this is insufficient.

The Court therefore finds that it lacks personal jurisdiction over the Trinity defendants.[3]  Once a Court determines that it lacks personal jurisdiction it may dismiss the case or, in the interest of justice, transfer the case. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of 28 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."); *see also Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985) (courts may transfer under § 1404(a) even where personal jurisdiction is lacking); *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002). The Court finds that transfer is appropriate here, as discussed in the next section.

## II.   TRANSFER OF VENUE

Even were Adobe to establish personal jurisdiction in this forum, the Court finds that transfer of venue to the Middle District of Florida in the interest of justice is appropriate here. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A

---

[3]Because Adobe has not established specific jurisdiction under the first prong of the Ninth Circuit's three-part test, the Court need not address the latter two prongs. Nonetheless, the Court notes that personal jurisdiction fails on the third prong – for reasons of fair play and substantial justice – for the same reasons that it transfers the case under § 1404, as discussed in the next section. *See infra*.

11

motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Neither party disputes that this case could have been brought in the Middle District of Florida.

Courts in this District evaluate the following factors to determine which venue is more convenient to the parties and the witnesses: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. *See Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).

### A.  Plaintiff's Choice of Forum

There is ordinarily a strong presumption in favor of a plaintiff's choice of forum. *Piper Aircraft Co v. Reyno*, 454 U.S. 235, 265-66 (1981). However, "if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Here, as set forth above, very few – if any – of the operative facts occurred in the Northern District of California. Even if the Court were to consider the purchase of the Adobe OEM software by Adobe's investigator as an operative fact, that occurred in Newhall, California, which is in Southern California. Shaffer Supp. Decl. ¶ 4. Insofar as Adobe is headquartered here and chose this forum, this factor falls minimally in Adobe's favor of denying transfer.

### B.  Convenience of the Parties

Trinity is a Florida corporation with its principal place of business located in Tampa, Florida. Compl. ¶ 13. Shaffer, the president and sole shareholder of Trinity, resides in Tampa. She oversees all of Trinity's employees, supervises the sales department, and is the sole signatory on the checking account. She states that travel to the Northern District will cause significant financial hardship to her and harm her company. Shaffer Decl. ¶ 13. She further states that this hardship to the business would

12

be compounded if her employees had to leave their homes and travel here. *Id.*

"In analyzing the convenience of a forum, the court may also consider the parties' relative ability to afford the expenses of litigating in that forum." *Healthtrac Corp. v. Caterpillar, Inc.,* 2005 WL 2811765, *4 (N.D. Cal. 2005) (Patel, J.). Plaintiff provides evidence of her modest income, and notes that she will have difficulty affording to pay for travel expenses for herself to San Francisco, let alone pay for any supporting witnesses. Shaffer Supp. Decl. ¶ 19. Adobe, on the other hand, is a multi-billion dollar company that describes itself as a "global leader in developing and distributing innovative computer software." Pl.'s Opp. at 2. While a court should not simply "burden shift" by transferring venue, Adobe has provided no evidence that it would be burdened by litigating this case in Florida. *See Decker Coal Co.*, 805 F.2d at 843. Defendants, on the other hand, have provided evidence that "defending this action in the Northern District of California would likely be untenable and overwhelming." Def.'s Mot. at 23. This factor falls in favor of transfer.

### C. Convenience of the Witnesses

The convenience of the witnesses is often considered the most important factor in ruling on a motion under § 1404(a). *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002). The parties dispute which witnesses are relevant to this action. Defendants argue – and the Court agrees – that the relevant witnesses would have information regarding what Adobe OEM products the defendants purchased and sold. Other relevant information would include how defendants purchased the software, and information related to the design and content of defendants' website. Witnesses who can provide this relevant information are primarily located in Florida, and include Shaffer's spouse, Trinity's current and former employees, representatives of one of the suppliers of Adobe OEM products to Trinity, and Trinity's outside accountant. Shaffer Decl. ¶ 14. Shaffer also notes that many of the customers who purchased the OEM software are located in and around Florida. *Id.* Finally, she asserts that one of Trinity's suppliers whose employees interacted with Adobe personnel "and would be able to help us demonstrate that the Adobe OEM product Defendants sold is protected from copyright claims by the first sale doctrine" is located in Fort Lauderdale, Florida. Shaffer Supp. Decl. ¶ 20. *See Williams*, 157 F. Supp. 1103 at 1108 (in order to demonstrate inconvenience, the

moving party must identify relevant witnesses and describe their testimony).

Adobe states that there are numerous witnesses in this District relevant to this action. It lists a number of companies based in Northern California, including Apple, eBay, Facebook, FileMaker, Google, Intuit, and PayPal. Yet Adobe does not explain – nor is it apparent to the Court – how testimony from these companies would be relevant to this infringement action. Adobe does provide a declaration stating that "one or two" non-party witnesses located in the San Francisco area that were involved in investigations would be prepared to testify. Draper Decl ¶ 11. The Court agrees that those witnesses would be relevant. However, the center of gravity of witnesses is, by far, in the area surrounding defendants' business, i.e., the Middle District of Florida.

This factor weighs heavily favor of transfer.

### D.     Ease of Access to the Evidence

The bulk of evidence related to Trinity's alleged infringement activities will be located in the Middle District of Florida, where Trinity's business and storefront are located. While this factor plays less of a role due to the advances of document storage, retrieval, and data transfer, "to the extent that the 'bulk of the relevant evidence usually comes from the accused infringer in a copyright infringement case, this factor weighs slightly in favor of transfer.'" *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 820 (N.D. Cal. 2008) (Alsup, J.).

Within the "ease of access" inquiry, the Court also considers a court's ability to oversee and enforce an injunction where one is being sought, as it is here. *See Law Bulletin Pub., Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1021 (N.D. Ill. 1998). The Middle District of Florida is "the better forum to enforce and monitor any injunctive relief awarded because the Florida court would be 'closer to the action.'" *Id.*

Courts also consider the availability of compulsory process for attendance of unwilling witnesses. *See Decker Coal Co.*, 805 F.2d at 843. Defendants state that they have identified certain Florida-based former employees and representatives of a key supplier "who will be needed to testify, and who will likely be unwilling to do so if they are required to travel to this District. These witnesses cannot be compelled to testify in the Northern District of California, which will result in a fundamental

14

violation of Defendants' Due process rights . . ." Def.'s Mot. at 23. Adobe does not contend any of its witnesses will be unavailable to testify in the Middle District of Florida.

This factor falls in favor of transfer.

### E. Other Factors

The final factors – familiarity of each forum with the applicable law, feasibility of consolidation with other claims, any local interest in the controversy, and the relative court congestion and time of trial in each forum – are all either inapplicable (as only federal law applies and there are no other claims) or neutral. The Court does note that acceptance of Adobe's theory of personal jurisdiction – that the use of popular internet-based services can provide the basis of personal jurisdiction in Northern California – would have deleterious effects on this District's docket congestion.

In sum, one factor – plaintiff's choice of forum – weighs slightly in favor of denying transfer; three factors – including the most important factor, convenience of the witnesses – weigh strongly in favor of transfer. The Court therefore finds that transfer to the Middle District of Florida pursuant to § 1404(a) is appropriate.

The Court GRANTS defendants' motion to transfer this action to the Middle District of Florida.

### CONCLUSION

The Court finds that it lacks personal jurisdiction over defendants. The Court also finds that transfer to the Middle District of Florida pursuant to § 1404(a) is warranted, and hereby TRANSFERS this action.

**IT IS SO ORDERED.**

Dated: August 29, 2012

SUSAN ILLSTON
United States District Judge